[Civ. No. 6835. Third Dist. Sept. 28, 1942.]

Estate of FREDERICK C. STAHL, Deceased. MAR-
GUERITE McDONALD, Respondent, v. EMMA
STEVENSON et al., Appellants.

Henry & Bedeau for Appellants.

Albert E. Sheets, Anthony J. Kennedy and Carl Kuchman for Respondent.

SCHOTTKY, J. pro tem.—Frederick C. Stahl died testate in Sacramento County on September 21, 1942. He left surviving him his wife Anna Stahl, and a daughter by a former marriage, Marguerite McDonald, respondent here. By his will he bequeathed to his wife one-half share of the community property, and bequeathed to appellants, who are respectively,

a sister, brother and nieces of decedent, all his estate "after my said wife, Anna M. Stahl receives her one-half of the cash community property." The will made no mention of, or provision for, his said daughter, Marguerite McDonald, who thereafter filed a petition to determine heirship, claiming to be a pretermitted child of decedent, and that she was entitled to inherit under sections 90 and 91 of the Probate Code. The trial court, after hearing, found that the property left by decedent was his separate property; that petitioner, Marguerite McDonald was his child; that she was not provided for in his will, and was unintentionally omitted therefrom; that she was unprovided for by any settlement, and had not an equal proportion of the decedent's property bestowed upon her by way of advancement; and the trial court directed that one-half of the estate of said decedent be distributed to said respondent Marguerite McDonald, and that the remaining one-half be distributed to appellants in the proportions specified in the will.

Appellants upon this appeal contend that the finding of the trial court that the property left by decedent was his separate property is not supported by any substantial evidence, and that therefore the order and decree awarding respondent one-half of the estate, and taking that one-half away from appellants, is erroneous.

It is a rule too well established to require the citation of authorities that before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may be drawn therefrom, it still appears that the law precludes the prevailing party from recovering a judgment. The evidence must be construed most strongly against the losing party. Every favorable inference and presumption which may fairly be deduced from the evidence should be resolved in favor of the prevailing party. The prevailing party's evidence must ordinarily be accepted as true, and evidence which is contradictory must be disregarded.

Bearing in mind this familiar rule, which, we are constrained to state, is too often disregarded by counsel in arguing conflicting evidence before an appellate court, a brief summary of the facts as shown by the record in this case, is as follows:

Testator and Anna Stahl were married in 1909, and in the years which followed had accumulated considerable

property, including $42,549.91 in cash. On May 4, 1939, this cash was in joint bank accounts with the spouses as joint tenants. Upon the establishing of each of these joint accounts a written agreement was entered into between the spouses, and with the respective banks, fixing the status of the money deposited to be in joint ownership with the right of survivorship. On May 4, 1939, Mrs. Stahl withdrew $22,-942.19 from these various joint accounts without consulting testator, and redeposited this amount in separate bank accounts in her name alone. She testified that she did this because testator had been drinking and drawing checks. On May 5, 1939, the day after Mrs. Stahl made her withdrawals from these accounts and from the safe deposit box and redeposited the money in separate accounts in her own name, testator was fully advised by her as to what she had done, and was told by her that she had withdrawn what she estimated was her share of their money from the joint bank deposits, and that the remainder was his, and that testator agreed to this, and thereafter withdrew the remainder of the money in said joint accounts, and redeposited it in accounts of his own, being assisted in this by Mrs. Stahl. These separate accounts so established by testator continued in his name until the time of his death, and the money in them constitutes the cash in his estate.

In addition to this accumulated cash, the testator and Mrs. Stahl owned real property, which was held by them in joint tenancy. Mrs. Stahl was also earning a salary of $130 per month as a hotel manager, and continued to do so until the testator died. As part of the transaction terminating the joint tenancy in the bank deposits, testator kept and used as his separate funds all of the rentals from the joint tenancy real estate according to the agreement between himself and Mrs. Stahl, and also, Mrs. Stahl paid him $50 each month from her earnings, to be his separate property, which he put in his safe deposit box and kept there until his death, when this money became a part of his estate. After May 5, 1939, until the day of his death, testator took no action to recover any of the money withdrawn by Mrs. Stahl, but on the contrary, he accepted $250 of the money withdrawn by Mrs. Stahl as the purchase price of his interest in their community automobile, and gave her a bill of sale therefor. The testator executed his will on August 8, 1939, and by it he bequeathed all of the cash in his bank accounts and safe deposit box to appellants. After the commencement of the probate pro-

ceedings, appellants entered into a written agreement with Mrs. Stahl, by which she assigned to them all her right, title and interest in or to the money which came into the estate.

There is, of course, some testimony contradicting some of the facts hereinbefore set forth, but, as hereinbefore stated, we are not here concerned with the matter of weighing conflicting testimony. The question we have to decide is whether, taking all of the evidence into consideration, together with every inference and presumption favorable to respondent which may be adduced therefrom, and disregarding all evidence in conflict therewith, we must conclude that the evidence is insufficient to sustain the order of the court.

The trial court found that all the moneys in the separate bank accounts of testator and in the safe deposit box were his separate property. The court further found that at all times after May 5, 1939, until testator's death there was an agreement and implied contract between Mrs. Stahl and testator for the termination of the joint tenancy and division of said accumulated cash, into the separate property of each of them respectively; and the court further found that Mrs. Stahl and the appellants as her assignees were estopped to deny the termination of the joint tenancy in said bank accounts, and to deny that the money withdrawn therefrom by the testator was, and is, his separate property.

Section 15a of the Bank Act (Deering's Gen. Laws, 1937, Act 652), provides in part as follows:

"When a deposit shall be made in any bank by any person or persons whether minor or adult in the names of such depositor or depositors and another person or persons, and in form to be paid to any of them or the survivor or survivors of them, such deposit and any additions thereto made by any such persons after the making thereof, shall become the property of such persons as joint tenants, . . ."

In *Siberell* v. *Siberell*, 214 Cal. 767 [7 P. (2d) 1003], the court said, at page 773:

"First, from the very nature of the estate, as between husband and wife, a community estate and a joint tenancy cannot exist at the same time in the same property. The use of community funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property but instead as a joint tenancy with all the characteristics of such an estate. It would be manifestly in-

equitable and a subversion of the rights of both husband and wife to have them in good faith enter into a valid engagement of this character and, following the demise of either, to have a contention made that his or her share in the property was held for the community, thus bringing into operation the law of descent, administration, rights of creditors and other complications which would defeat the right of survivorship, the chief incident of the law of joint tenancy. A joint tenancy is one estate and in it the rights of the spouses are identical and coextensive. Secondly, on its face section 164 has no application to a case where 'a different intention is expressed in the instrument' and it seems to us to be clear, as already pointed out above, that a joint tenancy, the evidence of which the law requires to be on the face of the conveyance creating it, is of necessity an expression of the intention to hold the property otherwise than as community property and that the equal interest of the spouses must therefore be classed as their separate but joint estate in the property.''

Appellants assert that the moneys deposited in various joint accounts was community property. They then state:

''In other words, property of a husband and wife can be in joint tenancy but still be community property in character. The presumption is that the placing of property in joint tenancy terminates and severs, by consent, the community interest, provided there is no evidence of an intent to the contrary. Mrs. Stahl, the surviving wife, gave no evidence as to any agreement, or as to any fact or circumstance from which an intent could be inferred that the property in joint tenancy was to retain its community character. However, respondent Marguerite McDonald, introduced as her evidence the last will and testament of decedent. This will was dated August 8, 1939, three months and four days after Mrs. Stahl had withdrawn the moneys from the joint accounts. The declarations of the testator as to the character of the property left by him is competent evidence to show that character.''

In view of the law and the written agreement signed by the spouses when the joint tenancy accounts were established, we must hold that this argument of appellants was not supported by the evidence. Even if the will of decedent could be construed as stating that said joint accounts were community property, such declarations of the testator would cer-

tainly not compel a finding to that effect in the face of the contrary evidence.

Appellants' argument as we analyze it, is intended to assert that when the testator withdrew his remaining one-half of the money in the joint tenancy accounts, and placed it in an account of his own, where it remained until his death, said money retained its character as community property. Appellants brand as unbelievable and inherently improbable, the testimony of Mrs. Stahl as to the action taken by herself and the testator in withdrawing the moneys from said accounts and the agreement to divide them, and the establishing of separate accounts by each of the spouses for their respective shares. We do not regard the testimony of Mrs. Stahl as inherently improbable, but we construe it not only as probable, but entirely reasonable; and certainly the finding of the court that the moneys remaining in the account established by the testator after the closing of the joint tenancy accounts, was the separate property of testator is amply supported by the record.

We deem it unnecessary to prolong this opinion by discussing some of the other arguments advanced by appellants. It is sufficient for the purposes of this decision that it is clear from the record that the court was fully justified in holding that the moneys deposited in the joint tenancy accounts was not community property; that it was divided between the spouses by mutual agreement, and that thereafter the respective shares of the spouses were their separate property; and that upon the death of testator, his share of said moneys, on deposit in accounts in his own name, was his separate property.

In view of the foregoing, that portion of the decree determining heirship decreeing the money of the testator to be his separate property, and awarding one-half thereof to petitioner and respondent, should be, and the same is, hereby **affirmed.**

Adams, P. J., and Thompson, J., concurred.